## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RODNEY DALE JUSTUS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-0291-CVE-JFJ** |
| | ) | |
| **SCOTT CROW,[1]** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This matter is before the Court on the amended 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 11), filed by petitioner Rodney Dale Justus, a state inmate appearing through counsel. Justus challenges the constitutional validity of the judgment and sentence entered against him in the District Court of Pawnee County, Case No. CF-2014-31. Having considered the amended petition, respondent Scott Crow's response (Dkt. # 13) in opposition to the amended petition, and the record developed in state court (Dkt. ## 13, 14), the Court concludes that 28 U.S.C. § 2254(d) bars Justus's request for federal habeas relief and denies the amended petition.

### *BACKGROUND*

Following a traffic accident near Cleveland, Oklahoma, that resulted in the deaths of Linda and Glenn Edwards, the State of Oklahoma (the state) charged Justus with two counts of first degree manslaughter, possessing a controlled dangerous substance, and driving left of center. Dkt. # 14-1,

---

[1]   Pursuant to FED. R. CIV P. 25(d), the Court substitutes Scott Crow, Director of the Oklahoma Department of Corrections (ODOC), in place of Joe M. Allbaugh, the ODOC's former director, as party respondent. The Clerk of Court shall note on the record this substitution.

O.R. vol. 1, at 6-7.[2]  The case proceeded to a jury trial in November 2015, and the jury found Justus guilty as charged.   Dkt. # 14-3, O.R. vol. 3, at 53-57.   The jury recommended 25 years' imprisonment for each manslaughter conviction, one year in prison for the drug possession conviction, and a 10 days in jail for the traffic violation.  Dkt. # 14-3, O.R. vol. 3, at 53-57. Following a hearing on January 22, 2016, the trial court adopted the jury's sentencing recommendations and ordered the 25-year prison sentences to be served consecutively to each other, with all other sentences to be served concurrently with the first 25-year sentence. Dkt. # 14-3, O.R. vol. 3, at 72-74; Dkt. # 14-8, Tr. Sentencing Hr'g, at 1, 21-22.

Represented by appellate counsel, Justus filed a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), raising five claims.   Dkt. # 13-1, Br. of Appellant, at 1.   In an unpublished summary opinion filed March 1, 2017, the OCCA adjudicated each claim on the merits and affirmed Justus's convictions and sentences.  Dkt. # 13-3, Justus v. State, No. F-2016-87 (Okla. Crim. App. 2017) ("OCCA Op."), at 1-5.  Justus did not file a petition for writ of certiorari in the United States Supreme Court.  Dkt. # 11, Am. Pet., at 3.

Justus, represented by habeas counsel, filed his original petition for writ of habeas corpus (Dkt. # 2) seeking federal habeas relief on May 30, 2018, and filed an amended petition for writ of

---

[2]     The Court uses "O.R." to refer to the original record from Justus's state-court criminal proceeding.  The Court's citations refer to the CM/ECF header pagination.  However, citations to transcripts also include, in brackets, the original transcript page number if that number differs from the CM/ECF header pagination.

habeas corpus (Dkt. # 11), on January 2, 2019.[3]  Crow filed a response (Dkt. # 13) in opposition to

the amended petition and provided records (Dkt. ## 13, 14) from state court proceedings that are

necessary to adjudicate the claims asserted in the amended petition.[4]  Justus did not file an optional

reply brief.

## *ANALYSIS*

Justus identifies four federal claims in his amended petition.  First, he claims that trial

counsel performed deficiently and prejudicially, in violation of his Sixth Amendment right to the

effective assistance of counsel, by failing to move to exclude a juror who was statutorily ineligible

to serve.  Dkt. # 11, Am. Pet., at 7.  Second, he claims that he was deprived of his Fourteenth

Amendment right to due process because the State failed to present sufficient evidence to show that

he was under the influence of an intoxicating substance and thus failed to prove, beyond a reasonable

doubt, that he was guilty of first degree manslaughter.  Dkt. # 11, Am. Pet., at 9.  Third, he claims

that he was deprived of his Fourteenth Amendment right to due process because the trial court

admitted two "unfairly gruesome" photographs that Justus contends were "irrelevant and highly

prejudicial."  Dkt. # 11, Am. Pet., at 10.  Fourth, he claims that he was deprived of his Fourteenth

---

[3]     In the original petition, Justus included six claims, two of which he first presented to the state
district court through a motion, filed June 5, 2017, requesting relief under Oklahoma's
Postconviction DNA Act.  Dkt. # 2, at 3; Dkt. # 10, at 3.  Because those two claims were
pending in state district court when Justus filed his original petition, Justus moved for a stay
of this habeas proceeding pending exhaustion of those claims.  Dkt. # 6.  Crow moved to
dismiss the original petition, citing the two unexhausted claims.  Dkt. ## 7, 8.  In an opinion
and order (Dkt. # 10) filed December 18, 2018, the Court denied Justus's motion for a stay,
and advised Justus that it would grant Crow's dismissal motion unless Justus filed an
amended petition, asserting only his four exhausted claims.  On January 3, 2019, after Justus
filed the amended petition, the Court denied Crow's motion to dismiss and directed Crow
to file a response to the amended petition.  Dkt. # 12.

[4]     Additional facts relevant to each of Justus's claims are developed in the analysis section.

Amendment right to due process because the State failed to present sufficient evidence to prove, beyond a reasonable doubt, that he possessed the marijuana found on the passenger-side floorboard of his truck. Dkt. # 11, Am. Pet., at 12.

Crow contends that Justus's third claim, challenging the admission of evidence, alleges only an error of state law that is not cognizable on habeas review. Dkt. # 13, Resp., at 34-38. Crow further contends that even if claim three sufficiently alleges a due-process violation, 28 U.S.C. § 2254(d) bars federal habeas relief as to all four claims. Dkt. # 13, Resp., at 15-34, 39-44.[5]

Because the OCCA adjudicated the merits of Justus's claims, § 2254(d) bars habeas relief unless Justus first demonstrates that the OCCA's adjudication of his claims resulted in a decision that either (1) "was contrary to . . . clearly established Federal law," (2) "involved an unreasonable application of clearly established Federal law," or (3) "was based on an unreasonable determination of the facts in light of the evidence presented" to the OCCA on direct appeal. 28 U.S.C. § 2254(d)(1)-(2).

Under § 2254(d)(1), habeas review focuses on the state court's legal analysis of the petitioner's federal claim. As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)); see also House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed

---

[5]     Crow concedes that Justus complied with 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations, and that Justus exhausted available state remedies by presenting all four claims to the OCCA, as required by 28 U.S.C. § 2254(b)(1)(A). Dkt. # 13, Resp., at 2.

narrowly and consist only of something akin to on-point holdings"). "To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." <u>Cullen v. Pinholster</u>, 563 U.S. 171, 182 (alterations in original) (quoting <u>Williams</u>, 529 U.S. at 405, 406). "A state-court decision is only contrary to clearly established federal law if it 'arrives at a conclusion opposite to that reached by' the Supreme Court, or 'decides a case differently' than the Court on a 'set of materially indistinguishable facts.'" <u>Wood v. Carpenter</u>, 907 F.3d 1279, 1289 (10th Cir. 2018) (quoting <u>Williams</u>, 529 U.S. at 412-13). "If the state-court decision 'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" <u>Pinholster</u>, 563 U.S. at 182 (quoting <u>Williams</u>, 529 U.S. at 413). "Because an *unreasonable* application of federal law is different from an *incorrect* application of federal law," <u>Williams</u>, 529 U.S. at 410, a federal court cannot grant habeas relief unless it determines that the state court's application of the law was "objectively unreasonable," <u>Lockyer</u>, 538 U.S. at 75-76.

Under § 2254(d)(2), habeas review focuses on the state court's determination of the facts the state court relied on to adjudicate the petitioner's federal claim. A petitioner can establish that a state court's decision on a federal claim rests on an unreasonable determination of the facts if the petitioner shows either that the state court "plainly and materially misstated the record" or "that reasonable minds could not disagree that the finding was in error." <u>Smith v. Duckworth</u>, 824 F.3d 1233, 1250 (10th Cir. 2016). And, in considering a challenge to the state court's factual determination, a federal court must presume the correctness of the state court's factual findings

unless the petitioner rebuts that presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

"As amended by [the Antiterrorism and Effective Death Penalty Act (AEDPA)], § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings."  Harrington v. Richter, 562 U.S. 86, 102 (2011).  Nonetheless, Congress intended that it would be "difficult" for a habeas petitioner to satisfy the standards in § 2254(d) because "state courts are the principal forum for asserting constitutional challenges to state convictions" and the federal remedy of "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  Richter, 562 U.S. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

Lastly, even if a habeas petitioner satisfies § 2254(d)'s exacting standards, the petitioner is not necessarily entitled to habeas relief.  Rather, showing that § 2254(d) does not bar relief merely permits the federal court to review the petitioner's federal claims without deference to the state court's decision.  Milton v. Miller, 744 F.3d 660, 670-71 (10th Cir. 2014).  If the federal court finds a constitutional error on de novo review, it then "must assess the prejudicial impact of [that] constitutional error . . . under the 'substantial and injurious effect' standard set forth in Brecht [v. Abrahamson, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness."  Fry v. Pliler, 551 U.S. 112, 121-22 (2007).  Under the Brecht standard, a federal court will grant habeas relief only if it "is in grave doubt as to the harmlessness of an error that affects substantial rights."  O'Neal v. McAninch, 513 U.S. 432, 445 (1995).

With this legal framework in mind, the Court turns to Justus's claims.

I.      **Ineffective assistance of counsel (claim one)**

In claim one, Justus alleges that trial counsel performed deficiently and prejudicially, in violation of his Sixth Amendment right to the effective assistance of counsel, by failing to move to exclude a juror who was statutorily ineligible to serve.  Dkt. # 11, Am. Pet., at 7.

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the defendant has the right to the assistance of counsel.  U.S. Const. amend. VI.  A defendant can establish a violation of this right by showing (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Wiggins v. Smith, 539 U.S. 510, 521, 534 (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).  In assessing counsel's performance, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  And, in assessing resulting prejudice, the reviewing court "must consider the totality of the evidence before the judge or jury" and "ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." Id. at 695-96.

"Even under de novo review, the standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105.  But habeas review of a Strickland claim is "doubly" deferential. Id. (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562

7

U.S. at 105.  As the <u>Richter</u> Court cautioned, "[f]ederal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d)."  <u>Id.</u>

The facts relevant to Justus's claim are few and undisputed.  During voir dire, a potential juror, S.W., identified herself as a case manager who worked at a state correctional center and informed the trial court that her everyday work would not affect her ability to listen to the evidence or to determine an appropriate punishment.  Dkt. # 14-4, Tr. Trial vol. 1, at 79-80, 88-89.  When the prosecutor inquired further about her work, S.W. explained that she is not involved in assigning offenders to one of the various state facilities and responded, "Yes," when asked if she "could sit in this case, hear all the evidence, and render a fair and impartial verdict."  Dkt. # 14-4, Tr. Trial vol. 1, at 148-49.  Trial counsel asked S.W. no questions and did not seek her removal.  Dkt. # 14-4, Tr. Trial vol. 1, at 173-94.

On direct appeal, Justus raised two claims regarding the fact that S.W. served as a juror even though Oklahoma law provides that a correctional officer is ineligible to serve as a juror in a criminal trial.  Dkt. # 13-1, Br. of Appellant, at 2; <u>see</u> OKLA. STAT. tit. 38, § 28(D) ("Jailers or law enforcement officers, municipal, state or federal, shall be eligible to serve on noncriminal actions only.").  First, Justus claimed that "plain, structural error occurred" when the trial court permitted a statutorily ineligible juror to serve on the jury and that the error deprived him of due process and his right to a fair trial.  Dkt. # 13-1, Br. of Appellant, at 13-19.  Second, Justus claimed that trial counsel's failure to challenge and remove S.W. from the jury was both deficient and prejudicial and thus deprived him of his right to the effective assistance of counsel.  Dkt. # 13-1, Br. of Appellant, at 20-21.

The OCCA rejected both claims and, while Justus reasserts only the ineffective-assistance-of-counsel claim in his amended petition, the OCCA's analysis of both claims is informative. As to the first claim, the OCCA noted that trial counsel did not seek S.W.'s removal and further noted that it was "trial counsel's duty to examine jurors on voir dire . . . and then reasonably raise any objection that might exist as to any member of the panel." Dkt. # 13-3, OCCA Op., at 2 (quoting Jones v. State, 128 P.3d 521, 533 (Okla. Crim. App. 2006)). Reviewing Justus's first claim for plain error, the OCCA reasoned that "statutory qualifications for jury service are not fundamental or constitutional in nature" and that "the overarching concern is whether a juror can be fair and impartial." Dkt. # 13-3, OCCA Op., at 2-3 (citing Kohl v. Lehlback, 160 U.S. 293, 301-03 (1895)). The OCCA rejected Justus's argument that "empaneling a statutorily ineligible juror is structural" error and concluded that no plain error occurred because "[t]he record does not support the finding that the inclusion of the juror at issue affected Justus's substantial rights." Dkt. # 13-3, OCCA Op., at 3. As to the ineffective-assistance-of-counsel claim, the OCCA applied Strickland and found no prejudice. Dkt. # 13-3, OCCA Op., at 3-4. Consistent with its ruling on his first claim, the OCCA stated that "[t]he record does not support the finding that the inclusion of [S.W.] on the jury affected Justus's substantial rights." Dkt. # 13-3, OCCA Op., at 3-4. The OCCA further found that Justus failed to "show[] a reasonable probability that the result would have been different if counsel had objected and removed [S.W.]" and thus concluded that his ineffective-assistance-of-counsel claim "fails based on lack of prejudice." Dkt. # 13-3, OCCA Op., at 4.

As previously stated, Justus seeks federal habeas relief only on the second claim he presented to the OCCA, namely, his ineffective-assistance-of-counsel claim. For two reasons, the Court agrees with Crow that § 2254(d) bars relief as to that claim. First, Justus cannot show that the

9

OCCA's decision is contrary to clearly established federal law because (1) the OCCA identified the two-part <u>Strickland</u> inquiry as the legal principle governing his claim and (2) Justus fails to identify any other Supreme Court precedent that has confronted the same set of facts and reached a result opposite to the one the OCCA reached in this case. <u>See</u> <u>Pinholster</u>, 563 U.S. at 182; <u>Wood</u>, 907 F.3d at 1289.

Second, Justus does not argue either that the OCCA unreasonably applied <u>Strickland</u> or that the OCCA unreasonably determined the facts presented in state court when it assessed his claim. Rather, he merely asserts, as he did on direct appeal, that counsel's failure to remove a statutorily ineligible juror denied him the effective assistance of counsel. Dkt. # 11, Am. Pet., at 7. Even assuming this lackluster assertion could be construed as questioning the objective reasonableness of the OCCA's decision, the Court cannot conclude that fairminded jurists would disagree with that decision. On direct appeal, Justus argued that he was prejudiced by counsel's failure to remove S.W. because S.W. "had great knowledge and experience as a result of being part of the [state correctional] system and could have shared this information with the rest of the panel," and that the resulting prejudice was "most clearly evidenced by the jury's finding of guilt and by the fact that Mr. Justus received very harsh sentences of 25 years for the felony offenses." Dkt. # 13-1, Br. of Appellant, at 21. As just discussed, the facts relevant to Justus's claim were undisputed and nothing in the record supports that the OCCA misstated them in determining that counsel's failure to remove S.W. did not result in prejudice; thus, Justus cannot show that the OCCA unreasonably determined the facts in reaching its decision. <u>See</u> <u>Smith</u>, 824 F.3d at 1250. Moreover, as further discussed below, the state presented sufficient evidence to support the jury's verdicts and recommendations as to punishment. Following review of the trial transcripts, the Court finds that it was entirely

reasonable for the OCCA to reject Justus's speculative argument that S.W.'s expertise as a correctional officer may have improperly influenced the jury as showing a mere possibility of a different outcome rather than a reasonable probability of a different outcome, as required to show prejudice under Strickland.  See Richter, 562 U.S. at 112 (discussing Strickland's prejudice prong and stating that "[t]he likelihood of a different result must be substantial, not just conceivable.").  Thus, Justus cannot show that the OCCA unreasonably applied Strickland.

For these reasons, the Court finds that § 2254(d) bars relief and therefore denies the amended petition as to claim one.

## II.   Sufficiency of the evidence (claims two and four)

Justus alleges that three of his convictions were obtained in violation of his Fourteenth Amendment right to due process because the state failed to present sufficient evidence to establish his guilt beyond a reasonable doubt.  Dkt. # 11, Am. Pet., at 9, 12.  In claim two, Justus argues that the state failed to establish, beyond a reasonable doubt, that he was under the influence of an intoxicating substance when he caused the head-on collision that killed Linda and Glenn Edwards and thus failed to prove that he was guilty of first degree manslaughter, as charged in counts one and two.  Dkt. # 11, Am. Pet., at 9.  In claim four, Justus argues that the state failed to establish, beyond a reasonable doubt, that he possessed the bud of marijuana found on the passenger-side floorboard of his truck and thus failed to prove that he was guilty of possessing a controlled dangerous substance, as charged in count three.  Dkt. # 11, Am. Pet., at 12.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees, among other things, that a state cannot obtain a criminal conviction without proving the defendant's guilt, as to each essential element of the crime charged, beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re Winship, 397 U.S. 358, 364 (1970).  When a criminal defendant challenges the sufficiency of the evidence to support his or herconviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson,443 U.S. at 319 (emphasis in original); see also Coleman v. Johnson, 566 U.S. 650, 656 (2012) ("[T]he only question under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."); Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993) (noting that the Jackson "standard requires [the reviewing court] to accept the jury's resolution of the evidence as long as it is within the bounds of reason").

"Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."  Coleman, 566 U.S. at 651.  "First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusion should be drawn from evidence admitted at trial.'"  Coleman, 566 U.S. at 651 (quoting Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam)).  Thus, a state court reviewing a challenge to the sufficiency of the evidence "may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos, 565 U.S. at 2.  "[S]econd, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was objectively unreasonable.'"  Coleman, 566 U.S. at 651 (quoting Cavazos, 565 U.S. at 2).

12

A.      **First degree manslaughter**

In counts one and two, the state charged Justus with first degree manslaughter, in violation

of OKLA. STAT. tit. 21, § 711.  Dkt. # 14-1, O.R. vol. 1, at 6.  That statute provides, in relevant part,

that "[h]omicide is manslaughter in the first degree . . . [w]hen perpetrated without a design to effect

death by a person while engaged in the commission of a misdemeanor."  OKLA. STAT. tit. 21,

§ 711(1).  The state alleged that Justus caused the deaths of Linda and Glenn Edwards while he was

unlawfully engaged in the misdemeanor of driving while under the influence of an intoxicating

substance.  Dkt. # 14-1, O.R. vol. 1, at 6-7.  As the jury was instructed, the state thus had to prove,

beyond a reasonable doubt:  (1) the death of a human, (2) occurred as a direct result of an act or event

which happened in the commission of a misdemeanor, (3) caused by Justus while in the commission

of a misdemeanor, (4) and the elements of the alleged misdemeanor—namely, that Justus was

(a) driving, (b) a motor vehicle, (c) on a highway, (d) while under the influence of any intoxicating

substance which may render a person incapable of safely driving a motor vehicle.  Dkt. # 14-3, O.R.

vol. 3, at 18, 25 (Instr. Nos. 16, 23).  The jury was further instructed that "under the influence" was

defined as:

> [A] [c]ondition in which an intoxicating substance has so far affected the nervous
> system, brain, or muscles of the driver as to hinder, to an appreciable degree, his
> ability to operate a motor vehicle in a manner that an ordinary prudent and cautious
> person, if in full possession of his faculties, using reasonable care, would operate or
> drive under like conditions.

Dkt. # 14-3, O.R. vol. 3, at 27 (Instr. No. 25).

Justus argued on direct appeal that the state's evidence "failed to show he was 'under the

influence' of an 'intoxicating substance,' even though evidence reflected the presence of controlled

substances in [his] blood."  Dkt. # 13-1, Br. of Appellant, at 24.  He further argued that "[t]he

13

evidence failed to correlate the presence of the substances in [his] blood to its probable effect on his ability to drive" and that "[w]ithout evidence of the known effects of the particular substances found, or their interactions, or [his] tolerance for the substances, it was impossible for the jury to make a reasonable determination of  [the substances'] effect on [his] ability to drive."  Dkt. # 13-1, Br. of Appellant, at 24.   Finally, he argued that while some witnesses testified that Justus exhibited common signs of intoxication after the collision, "[t]here was no evidence any substance present in [his] blood met any concentration level to have affected his nervous system and impaired his driving."  Dkt. # 13-1, Br. of Appellant, at 24-29.  The OCCA rejected Justus's sufficiency-of-the-evidence claim, stating:

> After reviewing the evidence in the light most favorable to the [s]tate, we find that any rational trier of fact could find beyond a reasonable doubt that Justus was guilty of First Degree Manslaughter based on the evidence presented at trial.  See Logsdon v. State, 2010 OK CR 7, ¶ 5, 231 P.3d 1156, 1161; Spuehler v. State, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04.  The evidence was sufficient to sustain Justus's conviction.

Dkt. # 13-3, OCCA Op., at 4.

Crow contends that § 2254(d) bars relief on claim two because the OCCA's decision applying the Jackson standard is not contrary to clearly established federal law, the OCCA did not unreasonably apply Jackson to the facts of this case, and the OCCA's decision does not rest on an unreasonable determination of the facts presented in state court.  Dkt. # 13, Resp., at 29-34.

The Court agrees.  Because the OCCA applied the Jackson standard in assessing Justus's claim, the only question under § 2254(d)(1) is whether the OCCA's application of that standard was objectively reasonable.  Though the OCCA did not expressly discuss the evidence supporting Justus's manslaughter convictions, the OCCA's failure to do so does not relieve Justus from the

14

burden of demonstrating that the OCCA's decision was objectively unreasonable. See Richter, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."). As Crow argues, Justus cannot meet that burden because the "jury received a substantial amount of evidence showing that [Justus] was under the influence of multiple intoxicating substances when he crossed the center line and collided with the Edwards' car." Dkt. # 13, Resp., at 33.

The evidence presented at trial established that Justus was driving his truck down the highway on July 26, 2013, with a female passenger, when his truck crossed the center line and collided head-on with the car that was being driven by Linda Edwards, killing Linda and her husband, Glenn, who was in the front passenger seat. Dkt. # 14-5, Tr. Trial vol. 2, at 38-41 [237-40], 53-58 [252-57], 60-62 [259-61], 78-79 [277-78], 109-12 [308-11]; Dkt. # 14-6, Tr. Trial vol. 3, at 28-36 [367-75], 71 [410], 109-10 [448-49]. Immediately after the collision, Justus told a first responder who asked about his medical history that he previously had back surgeries and that he had taken two prescription medications that he took on a daily basis, methadone and roxycontin or oxycodone. Dkt. # 14-5, Tr. Trial vol. 2, at 50 [249], 56-57 [255-56], 65-69 [264-68]. Justus also told the first responder that he thought he went left of the center line because one of his tires blew out. Dkt. # 14-5, Tr. Trial vol. 2, at 55 [254], 59 [258].

A state trooper who examined the damage to Justus's truck at the scene of the collision testified that the truck sustained front-end damage from the collision, that all four tires were inflated, and that there were no obvious signs of any mechanical failure, such as a broken tie rod, that would have caused the truck to suddenly veer to the left. Dkt. # 14-6, Tr. Trial vol. 3, at 18 [357], 35-36

15

[374-75].  When the state trooper later spoke with Justus at the hospital, on the day of the collision,

Justus told the trooper he "heard a pop" near the front end of the truck just before the collision.  Dkt.

# 14-6, Tr. Trial vol. 3, at 38-39 [377-78].  A few days after the collision, on July 30, 2013, the same

state trooper spoke with Justus at Justus's home, and Justus stated that he thought a tie rod might

have broken and mentioned that he had recent automotive repairs performed on the truck at a shop

in Fairfax, possibly by the name of Belcher's.  Dkt. # 14-6, Tr. Trial vol. 3, at 47-49 [386-88].  On

further investigation, the state trooper obtained a shop ticket from Buechler Auto Sales and Service

in Fairfax showing that Justus had work done on a left upper ball joint, an idler arm, and a right front

wheel assembly on August 21, 2012, nearly one year before the fatal collision.  Dkt. # 14-6, Tr. Trial

vol. 3, at 71-72 [410-11], 120-25 [459-64]; Dkt. # 14-9, Trial Exs., at 27.

An analyst with the Oklahoma State Bureau of Investigation performed a toxicology analysis

on blood drawn from Justus on the day of the collision.  Dkt. # 14-5, Tr. Trial vol. 2, at 127-29 [326-

28]; Dkt. # 14-6, Tr. Trial vol. 3, at 51 [390], 84-86 [423-25].  A presumptive 12-panel drug

screening test showed that Justus's blood tested positive for the presence of (1) drugs from the

benzodiazepine, cannabinoid, benzoylecgonine, and phenethylamine groups, (2) methadone and

(3) oxycodone.  Dkt. # 14-6, Tr. Trial vol. 3, at 88 [427].  Further testing confirmed the presence of

cocaine, methamphetamine, marijuana and methadone in Justus's blood.  Dkt. # 14-6, Tr. Trial vol.

3, at 88 [427], 96-97 [435-36]; Dkt. # 14-9, Trial Exs., at 2, 28, 30.  A paramedic who assessed

Justus after the collision testified that he observed that Justus appeared alert and oriented but had

delayed speech patterns and seemed to be confused, conditions the paramedic described as consistent

with intoxication, a head injury, or a person being in shock.  Dkt. # 14-5, Tr. Trial vol. 2, at 75 [274],

82 [281], 93-94 [292-93].

During a post-collision impound inventory search of Justus's truck, a state trooper and another law enforcement officer found a "green, leafy substance" on the front passenger-side floorboard. Dkt. # 14-5, Tr. Trial vol. 2, at 98 [297] 106-07 [305-06]. Based on his training and experience, the state trooper believed the substance was unburnt marijuana. Dkt. # 14-5, Tr. Trial vol. 2, at 106-07 [305-06], 114-15 [313-14]. The state trooper performed a field test on the substance and the results showed a presumptive positive for the presence of marijuana. Dkt. # 14-5, Tr. Trial vol. 2, at 108 [307].

Viewing this evidence in the light most favorable to the state and giving appropriate deference to the jury's role as factfinder and the jury's duty to weigh conflicting evidence, the OCCA concluded that "any rational trier of fact could find beyond a reasonable doubt that Justus was guilty of First Degree Manslaughter based on the evidence presented at trial." Dkt. # 13-3, OCCA Op., at 20. Viewing the OCCA's decision with the added deference imbued by § 2254(d), this Court concludes that the OCCA's decision was not objectively unreasonable. On the record presented, any rational juror could have discounted Justus's statements that he heard a "pop" and thought he either blew a tire or broke a tie rod because the state presented evidence that all four of his tires were inflated after the collision, there were no obvious signs of a broken tie-rod, and the recent automotive work Justus mentioned was performed nearly one year before the fatal accident. Further, any rational juror could have reasonably inferred from the evidence that the presence of more than one intoxicating substance in Justus's blood at the time of the collision and evidence that he exhibited delayed speech and confusion immediately after the collision demonstrated that he was intoxicated and thus unable to safely operate his truck, particularly when there was no other apparent reason that

he suddenly veered left of the center lane and into the other lane of traffic without any attempt to avoid the fatal collision.

Because it was objectively reasonable for the OCCA to decide that the jury's verdicts were within the bounds of reason, § 2254(d) bars relief as to claim two.

### B.      Possession of a controlled dangerous substance

In count three, the state charged Justus with possessing a controlled dangerous substance, marijuana, in violation of OKLA. STAT. tit. 63, § 2-402.  Dkt. # 14-1, O.R. vol. 1, at 6.  The state alleged that Justus knowingly had in his possession or under his control the marijuana found in his truck.  Dkt. # 14-1, O.R. vol. 1, at 7.  The jury was instructed that, to find Justus guilty of this misdemeanor, the state was required to prove that Justus (1) knowingly and intentionally (2) possessed (3) marijuana.  Dkt. # 14-3, O.R. vol. 3, at 21 (Instr. No. 9).  The jury was further instructed that possession could be actual or constructive, that constructive possession requires a showing that the person "knowingly has the power and the intention at a given time to exercise dominion or control over a thing," and that "mere proximity to a substance is insufficient proof of possession."  Dkt. # 14-3, O.R. vol. 3, at 23 (Instr. No. 21).

Justus argued on direct appeal that the state failed to present sufficient evidence to establish that he possessed a small bud of marijuana found on the passenger-side floorboard of his truck during the post-collision inventory search.  Dkt. # 13-1, Br. of Appellant, at 36-40.  In support of this argument, Justus emphasized that the marijuana was found on the passenger-side of the truck, that he had a passenger in the truck at the time of the collision, and that there was no direct evidence linking him to the marijuana.  Dkt. # 13-1, Br. of Appellant, at 40.  The OCCA rejected Justus's sufficiency-of-the-evidence claim, (again) without express analysis of the evidence, stating,

18

> After reviewing the evidence in the light most favorable to the [s]tate, we find that any rational trier of fact could find beyond a reasonable doubt that Justus was guilty of Possession of Controlled Dangerous Substance (Marijuana) based on the evidence presented at trial.  See Logsdon, 2010 OK CR 7, ¶ 5, 231 P.3d at 1161; Spuehler, 1985 OK CR 132, ¶ 7, 709 P.2d at 203-04.  The evidence was sufficient to sustain Justus's conviction.

Dkt. # 13-3, OCCA Op., at 4-5.

Crow contends that § 2254(d) bars relief on claim four because the OCCA's decision applying the Jackson standard is not contrary to clearly established federal law, the OCCA did not unreasonably apply Jackson to the facts of this case, and the OCCA's decision does not rest on an unreasonable determination of the facts presented in state court.  Dkt. # 13, Resp., 38-43.

Again, the Court agrees.  As just discussed, a state trooper and another law enforcement officer found a "green, leafy substance" on the front passenger-side floorboard of Justus's truck, and a field test confirmed the trooper's suspicion that the substance was marijuana.  Dkt. # 14-5, Tr. Trial vol. 2, at 98 [297] 106-08 [305-07], 114-15 [313-14].  Standing alone, this evidence might not have convinced any rational juror that Justus constructively possessed the marijuana.  But the jury also heard evidence that Justus's blood tested positive for the presence of marijuana, as well as cocaine and methamphetamine, on the day of the collision.  Dkt. # 14-6, Tr. Trial vol. 3, at 88 [427], 96-97 [435-36]; Dkt. # 14-9, Trial Exs., at 2, 28, 30.  Viewed in the light most favorable to the state, evidence that Justus had previously used marijuana and other illegal drugs provided strong circumstantial evidence that Justus constructively possessed the marijuana found in his truck.

On this record, the Court thus finds that it was objectively reasonable for the OCCA, applying the Jackson standard and giving due deference to the jury's role in weighing the evidence,

to determine that any rational juror could have found Justus guilty of possessing the marijuana found in his truck.  For that reason, § 2254(d) bars relief as to claim four.

### C.     Conclusion

Based on the foregoing, the Court concludes that § 2254(d) bars relief as to both claims challenging the sufficiency of the evidence to support Justus's convictions and therefore denies the amended petition as to claims two and four.

## III.    Admission of gruesome photographs (claim three)

In his third claim, Justus alleges that the trial court erroneously admitted two "irrelevant and highly prejudicial" photographs, State's Exhibits 14 and 15.  Dkt. # 11, Am. Pet., at 10.  Justus describes these photographs as "unfairly gruesome" and argues that the trial court's decision to admit them deprived him of a fair trial.  Dkt. # 11, Am. Pet., at 10.

Challenges to the admission or exclusion of evidence generally are matters of state law and do not present cognizable habeas claims.  See Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999) ("Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights.").  On federal habeas review the sole inquiry is "whether the admission of the [challenged] photographs rendered the proceeding fundamentally unfair."  Thornburg v. Mullin, 422 F.3d 1113, 1129 (10th Cir. 2005).  And a federal habeas court "will not disturb the state court's evidentiary rulings unless the [petitioner] demonstrates that the court's error was 'so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'"  Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) (quoting Williamson v. Ward 110 F.3d 1508, 1522 (10th Cir. 1997)).

20

Outside the jury's presence, the trial court held a brief conference to discuss the admission of several photographs. Dkt. # 14-6, Tr. Trial vol. 3, at 4-15 [343-54]. As relevant to Justus's third claim, the prosecutor described State's Exhibit 14 as "a photograph of the front end of the white Neon, showing the damage" to the Edwards's car, described State's Exhibit 15 as "show[ing] an interior shot of the driver's side, to include the body of Linda Edwards as it was found based on the damage and the collapse of the front end," and described State's Exhibit 18 as "a photograph that depicts the body of Linda Edwards after the front end of the vehicle has been removed, to better show the extensive injuries she sustained, especially to the lower half of her body." Dkt. # 14-6, Tr. Trial vol. 3, at 6 [345]. Trial counsel objected to the admission of all three photographs, arguing that the images were "graphic," "disturbing" and would "serve no purpose other than to inflame the passions of the jury." Dkt. # 14-6, Tr. Trial vol. 3, at 7-8 [346-47]. After considering other evidence that had already been admitted at trial regarding the extent of the Edwards' injuries, the trial court sustained the objection as to State's Exhibit 18, finding that the photograph likely would "inflame[]" the jury and that its prejudicial impact outweighed its probative value. Dkt. # 14-6, Tr. Trial vol. 3, at 11-14 [350-53]. The trial court overruled the objection to the admission of State's Exhibits 14 and 15, however, reasoning that both depicted "the position of the Edwards inside the vehicle before efforts were made to extricate them. And while State's Exhibit 15 is—demonstrates that Linda Edwards suffered an open compound fracture of her left radius and ulna, meaning the bones of the forearm, such that those bones are visible, it is not—it is demonstrative of the issues in the case. While it may be—while it may be a gruesome photograph, it is not, in the Court's mind, such that the likelihood of prejudice substantially outweighs the probative value in the case." Dkt. # 14-6, Tr. Trial vol. 3, at 14-15 [353-54].

21

On direct appeal, Justus argued that the trial court abused its discretion in admitting State's Exhibits 14 and 15 because both photographs were "irrelevant and highly prejudicial," particularly given that the cause of death was undisputed, and he further argued that admitting the photographs violated his right to due process and deprived him of a fair trial.  Dkt. # 13-1, Br. of Appellant, at 30-35.  The OCCA found "no abuse of discretion in the trial court's decision to admit the two photographs at issue because they were relevant and their probative value was not substantially outweighed by the danger of unfair prejudice."  Dkt. # 13-3, OCCA Op., at 4.

Crow contends that Justus's third claim fails because it alleges only an error of state law and, alternatively, that Justus is not entitled to federal habeas relief because has not demonstrated that the admission of the challenged photographs was so prejudicial as to deny him due process.  Dkt. # 13, Resp., at 34-38.  It is not clear from the OCCA's decision whether the OCCA recognized and adjudicated Justus's challenge to the evidentiary ruling as asserting a federal due-process claim. However, regardless of whether this Court (1) presumes that the OCCA rejected Justus's due-process claim and thus views claim three with the deference required under § 2254(d) or (2) finds that the OCCA perceived Justus's argument as alleging only a state-law claim and thus reviews the claim de novo, the Court agrees with Crow that Justus is not entitled to federal habeas relief.  Having reviewed the trial transcripts and all exhibits admitted at trial, including the two challenged photographs, this Court cannot conclude that the admission of the two photographs was "so grossly prejudicial" that it deprived Justus of his right to a fair trial.  The Court therefore denies the amended petition as to claim three.

*CONCLUSION*

Based on the foregoing analysis, the Court concludes that Justus has not made the necessary showings to obtain federal habeas relief.  The Court therefore denies his amended petition for writ of habeas corpus.  The Court further concludes that because reasonable jurists would not find the Court's assessment of Justus's federal claims debatable or wrong, no certificate of appealability shall issue.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court therefore declines to issue a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the substitution of Scott Crow in place of Joe M. Allbaugh as party respondent.

2. The amended petition for writ of habeas corpus (Dkt. # 11) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this matter.

**DATED** this 24th day of May, 2021.


_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

23